UNITED STATES DISTRICT COURT    FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

EDWARD JAMISON,

        Petitioner,    MEMORANDUM
                                AND ORDER
                                08-CV-614 (JG) (RML)
    -against-

ROBERT ERCOLE, Superintendent,
Green Haven Correctional Facility,

        Respondent.
-----------------------------------------------------------x

A P P E A R A N C E S :

    EDWARD JAMISON
        03-A-2144
        Green Haven Correctional Facility
        P.O. Box 4000
        Stormville, NY 12582
        Petitioner, *Pro Se*

    RICHARD A. BROWN
        Queens County District Attorney
        125-01 Queens Boulevard
        Kew Gardens, NY 10271
    By:   John M. Castellano
        Sharon Y. Brodt
        William H. Branigan
        Merri Turk Lasky
        Attorneys for Respondent

JOHN GLEESON, United States District Judge:

    Edward Jamison, currently incarcerated in Green Haven Correctional Facility, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, seeking relief from his conviction in New York State Supreme Court of robbery in the first degree and criminal

possession of a weapon in the third degree. Jamison asserts the invalidity of his conviction and sentence on ten different grounds. For the reasons stated below, Jamison's petition is denied.

BACKGROUND

A. *The Crime and the Investigation*

The government's evidence at trial established that at approximately 8:00 PM on April 23, 1998, a man pointed a loaded gun at the manager of a pet store in Queens and stole approximately $400 from the register. Three customers, including two small boys, were also present in the store. The robber ordered the customers and the manager to walk into the back of the store. When the manager heard the doorbell, she concluded that the robber had left the premises and called the police. A few minutes later, Jamison was arrested nearby. He was charged with, *inter alia*, robbery in the first degree and criminal possession of a weapon in the third degree.

At a brief *Sandoval* hearing prior to the trial, the court ruled that if Jamison took the stand, the prosecution would be allowed, for impeachment purposes, to ask about his 1986 conviction for third-degree criminal possession of a weapon and his 1989 conviction for second-degree robbery. At trial, Bridgette Zurita, a store employee, testified that Jamison entered the store, pulled a gun, pointed it at her, and demanded money. John Freeburg, a customer who was standing next to the robber, described the culprit as a black male, wearing a gray hooded sweatshirt and glasses, with a large gap in his front teeth. Andre Smith, who lived in the vicinity of the store, testified that he saw Jamison a few minutes after the crime, changing his clothes in some bushes around the corner from the store. He also testified that Jamison was putting a hooded sweatshirt into the black bag he was carrying. Smith confronted Jamison, then walked

2

toward his apartment building and returned with his building's doorman. As the two men ran toward the bushes, Jamison ran out of the bushes toward a nearby car wash. Smith picked up the bag, picked up some other items that were in the bushes, and placed those items in the bag. He then called the police.

Police Officers William McCabe and Scott Brenes arrived on the scene, and Smith testified that he gave them the bag. Officer Brian O'Keefe arrived shortly thereafter. After O'Keefe spoke with Smith, McCabe, and Brenes, the officers began to canvass the area surrounding the car wash. Jamison popped up from behind some barrels. He first told the officers that he was just walking by. He then said that he was homeless and had been sleeping behind the barrels. Smith arrived on the scene and identified Jamison as the man he had seen changing in the bushes, and Zurita also arrived and identified Jamison as the man who had robbed the store. Jamison was placed under arrest.

O'Keefe also testified that he recovered a black bag in the driveway of the car wash. The bag contained several items, including an address book with the name "Jamison" written on the front, a pair of sunglasses, a neoprene face mask, and $371, which Zurita identified as the money she had given the robber. Officer McCabe testified that he found a loaded .38 caliber revolver discarded near the car wash.

Jamison did not present a case. At summation, his lawyer argued that Zurita's identification was mistaken, noting that the robbery caused her great emotional distress, and pointing out that Freeburg, who had been standing at the robber's side during the robbery, did not affirmatively identify Jamison as the culprit. He also argued that the police had botched the investigation by failing to preserve the address book (which was wet when the officers recovered

3

it and appeared damaged by mildew when it was introduced at trial), by failing to photograph the gap they allegedly saw in Jamison's front teeth when he was apprehended, and by failing to dust the gun for fingerprints. Defense counsel also pointed out that, while Smith testified that he had given the black bag to the two police officers who first arrived on the scene, O'Keefe testified that he found the bag in the car wash driveway.

In response, the prosecution stated that if the police had photographed Jamison's teeth, his lawyer would claim that his constitutional rights had been violated, and that if they had tried to keep the address book dry, defense counsel would have accused them of tampering with evidence. The judge sustained objections to both statements. The prosecutor also stated that no one had asked Freeburg whether he could identify Jamison as the robber, and that the defense had done nothing to discredit Zurita's identification. The jury found Jamison guilty of first-degree robbery and third-degree criminal possession of a weapon. On June 7, 2000, Jamison was sentenced. The judge found that Jamison had the two violent felony convictions mentioned above (third-degree criminal possession of a weapon and second-degree robbery), and thus concluded that Jamison must be sentenced as a persistent violent felony offender. He was sentenced to a term of 25 years to life on the robbery count and 12 years to life on the criminal possession count, with his sentences to run concurrently.

B.     *Appeal and Collateral Proceedings*

On appeal, Jamison filed a counseled brief arguing that the trial court's *Sandoval* ruling denied him due process, that the prosecutor's summation denied him a fair trial, and that his sentence was unduly harsh. He also filed a pro se brief arguing that his right to be present at trial was denied by his exclusion from a sidebar conference on the admissibility of the black bag

4

and its contents, that defense counsel's cross-examination of Officer O'Keefe was unfairly restricted, that an adjournment of trial was improperly denied and that the black shoulder bag was improperly allowed into evidence. In an opinion dated March 17, 2003, the Appellate Division affirmed Jamison's conviction and sentence, holding that the *Sandoval* ruling was not an abuse of discretion, that Jamison was not denied his right to be present at all material stages of the trial, and that his sentence was not harsh or excessive. *People v. Jamison,* 756 N.Y.S.2d 495 (2d Dep't 2003). It further held that Jamison's "remaining contentions, including those raised in his supplemental pro se brief, either are unpreserved for appellate review or without merit." *Id.* Jamison sought leave to appeal to the Court of Appeals, which was denied on June 16, 2003. *People v. Jamison*, 100 N.Y.2d 562 (2003).

On December 15, 2003, Jamison filed a pro se motion to vacate his conviction pursuant to New York Criminal Procedure Law § 440.10. He claimed that his trial counsel was ineffective and that the prosecution had not submitted evidence to the grand jury sufficient to demonstrate that the gun allegedly used in the robbery was operable. The Supreme Court denied Jamison's motion, holding that his claims were procedurally barred because Jamison could have raised them on direct appeal. The Appellate Division denied Jamison's application for leave to appeal on May 6, 2004.

On or about April 8, 2004, Jamison filed a second, counseled motion to vacate his conviction and sentence, claiming that, because his 1986 conviction was not a violent felony, he was improperly sentenced as a mandatory persistent violent offender. He also alleged that his trial counsel was ineffective for failing to discover the true nature of the 1986 conviction while Jamison still had time to negotiate a favorable plea bargain. The state consented to the vacatur of

5

sentence, and, on September 27, 2004, the Supreme Court vacated Jamison's sentence and denied his ineffective assistance claim. Jamison received a 22-year sentence for the robbery charge and a six-year sentence for the possession charge. The Appellate Division affirmed the denial of Jamison's ineffective assistance claim and upheld his new sentence on January 16, 2007. *People v. Jamison*, 826 N.Y.S.2d 573 (2d Dep't 2007). Jamison sought leave to appeal to the Court of Appeals, which was denied on March 15, 2007. *People v. Jamison*, 8 N.Y.3d 923 (2007).

On April 26, 2007, Jamison moved for a writ of error *coram nobis* based on the allegedly ineffective assistance of his appellate counsel. He claimed that appellate counsel should have, on direct appeal, challenged the sufficiency of the grand jury evidence, asserted an ineffective assistance of trial counsel claim, and sought a hearing regarding an unrecorded plea offer that Jamison claimed was made during pre-trial proceedings. He also argued that counsel should have attacked his 1989 conviction during resentencing, and was prevented from doing so by a conflict of interest. The Appellate Division denied Jamison's motion, *People v. Jamison*, 842 N.Y.S.2d 920 (2007), and the Court of Appeals denied leave to appeal on January 18, 2008. *People v. Jamison*, 9 N.Y.3d 1035 (2008). On February 7, 2008, Jamison filed this timely petition.

DISCUSSION

A. *Review of State Adjudications under AEDPA*

A federal habeas court may overturn a state court's ruling on the merits of a claim only if the state decision was "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an

6

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. A decision is "an unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* at 413. An unreasonable application is more incorrect than a merely erroneous one, *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (citing *Williams*, 529 U.S. at 411), but while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence," *Gilchrist*, 260 F.3d at 93 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted)).

AEDPA's limited scope of review applies whenever a state court disposes of a state prisoner's federal claim on the merits and reduces its disposition to judgment, regardless of whether it refers to federal law in its decision. *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

B.   *Jamison's Claims*

   1.   *The* Sandoval *Ruling*

Jamison first argues that the trial court erred by ruling, prior to trial (as directed by *People v. Sandoval*, 357 N.Y.S.2d 849 (1974)), that if Jamison testified, the prosecution could

7

ask about his 1986 and 1989 convictions to impeach him on cross-examination. Because Jamison did not in fact testify at trial, however, this aspect of the trial judge's conduct is not reviewable in federal court.

When a defendant does not actually testify at trial, "[a]ny possible harm flowing from a district court's *in limine* ruling permitting impeachment by a prior conviction is wholly speculative." *Luce v. United States*, 469 U.S. 38, 41 (1984). Accordingly, in *Luce*, the Supreme Court held that such claims were not preserved for direct appellate review. *Id.* at 43. Although no appellate court has yet addressed the issue, it follows *a fortiori* that such claims are also not cognizable on habeas review. *See, e.g.*, *Warren v. Miller*, 78 F. Supp. 2d 120, 135 (E.D.N.Y. 2000).

  2. *The Prosecutor's Summation*

Jamison also claims that various remarks made by the prosecutor in summation deprived him of a fair trial. He argues that the prosecutor speculated on matters not in evidence by saying, as to witness John Freeburg, that "you [the jury] don't know if he was or he wasn't" able to identify Jamison as the robber. Tr. 289. He also asserts that the prosecution tried to inflame the passions of the jurors by commenting on Bridgette Zurita's reaction to seeing the gun at trial: "That is her reaction to having to take the longest walk of her life from behind that counter to the back of the store knowing full well that defendant was yielding [*sic*] this gun behind her." Tr. 299. Finally, Jamison maintains that the prosecutor improperly denigrated the defense by claiming that if the police had photographed Jamison's teeth at the line up, or attempted to dry out the wet address book in the black bag, the defense would have claimed that such actions were improper.

8

In determining the constitutionality of a prosecutor's summation, the question is "whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). It was not an unreasonable application of *Darden* for the state court to find that the challenged comments did not infect the trial with unfairness. Most of the prosecutor's comments strike me as fair. The prosecutor did not imply that, if asked, Freeburg would have identified Jamison as the robber. He simply stated, correctly, that there was no evidence as to whether Freeburg could identify Jamison, because no one had asked him to do so at trial. Similarly, the prosecutor's description of Zurita's experiences was an appropriate (if somewhat melodramatic) comment on the circumstances which informed the reliability of her identification of Jamison. As to the comments which allegedly denigrated the defense, objections to both of the statements were sustained by the trial court, and the prosecution did not pursue this line of argument further. Given the fairly innocuous tenor of the prosecution's summation, as well as the exacting standard articulated in *Darden*, I find that Jamison's prosecutorial misconduct argument is without merit.

3.  *The Eighth Amendment*

Jamison claims that his sentence was "unduly harsh and excessive," in violation of the Eighth Amendment. Pet. 3. This argument is meritless. Because Jamison's sentence was within the range prescribed by state law, he cannot establish that he faces cruel and unusual punishment. *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law."). Nor is Jamison's one of the "exceedingly rare" sentences, *see Ewing v. California*, 538 U.S. 11, 21

9

(2003), that offends the Eighth Amendment because it is "grossly disproportionate" to the crime. First-degree robbery is a serious and violent offense, and Jamison was far from a first-time offender. The Supreme Court has upheld longer sentences for non-violent offenses committed by first-time offenders. *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (upholding life sentence for first-time offender in possession of 672 grams of cocaine). Accordingly, Jamison's claim that he was sentenced in violation of the Eighth Amendment lacks merit.

    *4.    Exclusion from Sidebar*

During trial, defense counsel objected when the prosecution offered into evidence a black bag and its contents found near the crime scene. Jamison's attorney asked to be heard on this issue away from the jury, and Jamison now contends his rights were violated by his exclusion from this sidebar. Even assuming that Jamison was "excluded" from this hearing (despite his failure to object or otherwise attempt to join the sidebar), his claim fails.

"[A] defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987). Assuming the sidebar in question was critical to the outcome of Jamison's trial, he has failed to demonstrate how his presence could have contributed to its fairness. Defense counsel raised two issues at the sidebar: whether alleged gaps in the chain of custody rendered the black bag inadmissible, Tr. 205-06, and whether the failure to prevent the deterioration of the address book rendered the book inadmissible. Tr. 208. I cannot imagine, and Jamison has failed to suggest, any way in which his presence might have enhanced the fairness of the trial court's resolution of those issues. On direct appeal, Jamison asserted that "the only unequivocal expert on whether the address book

10

belonged to the defendant was the defendant himself." Pro Se Br. 12-13, *People v. Jamison*, 756 N.Y.S.2d 495 (2d Dep't 2003). This contention is irrelevant. The sidebar was called to determine the admissibility of the exhibits, not to decide whether they belonged to Jamison.

        5.        *The Confrontation Clause*

At trial, Officer O'Keefe testified that he had a conversation with Andre Smith when he arrived on the crime scene. After this conversation, he searched a nearby car wash, where he discovered Jamison. Tr. 183-84. While speaking with Jamison, Smith "came running up," and O'Keefe spoke with him again. Tr. 186. Based on that conversation, O'Keefe detained Jamison. *Id.* On cross examination, the following exchange occurred:

> MR. GOLDENBERG [defense counsel]: Now when you spoke to Mr. Smith did he give you a description of a male black approximately 6 feet tall medium build gray sweat shirt with a purse?
>
> MR. FARRUGIA [the prosecutor]: Objection, hearsay.
>
> MR. GOLDENBERG: Inconsistent statement, Your Honor.
>
> THE COURT: Objection sustained.

Tr. 218-19.

Jamison contends that this ruling violated his right to confront Officer O'Keefe. Although it is not entirely clear, Jamison seems to argue that he should have been permitted to elicit the fact that although Smith allegedly told the 911 operator that he saw a man going through a purse in the bushes, Jamison was not carrying a purse when he was apprehended. The trial court's ruling did not prevent him from doing so. The trial court only prevented him from eliciting this fact through inadmissible hearsay. This is insufficient to establish a constitutional

11

violation, as "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (internal quotation marks omitted).

      6.      *The Black Bag*

Jamison next argues that the black bag was improperly allowed into evidence because the prosecution failed to establish a chain of custody. Although it is not clear how the bag made its way from Andre Smith to Officer O'Keefe, it appears that only a few minutes passed between the time that Smith handed the bag to Officers McCabe and Brenes and O'Keefe picked up the bag in the driveway of the car wash where Jamison was apprehended. The lack of evidence as to the bag's whereabouts during this brief span did not render the bag inadmissible or Jamison's trial fundamentally unfair. The foundation for admitting the bag was not limited to its chain of custody; Smith testified that he remembered that specific bag, and that it was the bag he had picked up on the night of the robbery. In any event, Jamison was free to argue that the bag was not his. Furthermore, the Supreme Court has never considered whether and when improper authentication might violate the due process clause. Although it may be a close call whether the trial court's decision was consistent with New York cases addressing authentication, I certainly cannot say that its implicit conclusion (*i.e.*, that the admission of the bag did not violate due process) was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court. *See* 28 U.S.C. § 2254(d).

7. *Sufficiency of the Grand Jury Evidence & First Ineffective Assistance Claim*

One of Jamison's offenses of conviction, criminal possession of a weapon in the third degree, requires proof that the weapon is operable. Jamison asserts that his indictment was defective because the police ballistics lab had not, prior to his indictment, tested the gun he allegedly possessed. Jamison also argues that his trial counsel was ineffective because he was unprepared for trial, failed to request a jury charge on identification, waived several of Jamison's pre-trial appearances without his consent, and did not receive notice of a note from the jury asking to view an exhibit. Jamison first raised these claims in his initial § 440 motion, where the state court found them procedurally barred:

> Defendant's conclusory claim that the facts necessary to determine the above issues do not appear on the record of the proceedings is untrue, and may not be used to circumvent the procedural bar to this court's determining such issues when a defendant, as here, has appealed his conviction, but unjustifiably failed to raise them.

Short Order Denying Mot. to Vacate Judgment at 2, *People v. Jamison*, Ind. No. 1563/98 (N.Y. Sup. Ct. Mar. 1, 2004) (internal citation omitted).

When a state court "clearly and expressly" states that it bases its disposition of a claim on a state procedural bar, *Harris v. Reed*, 489 U.S. 255, 263 (1989) (internal quotation marks omitted), a federal habeas court will not review that claim unless petitioner demonstrates cause for the default and actual prejudice as a result of the alleged violation of federal law, *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), or shows that a fundamental miscarriage of justice would result if the court did not review the claim, which requires a petitioner to demonstrate "that he is actually innocent of the crime for which he has been convicted." *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002). The state court clearly based its decision on the state procedural bar, and Jamison has failed to show cause for and prejudice from his

13

default.  Nor has he alleged that he is actually innocent of the crimes of conviction.  Indeed, as to the alleged defect in the grand jury proceedings, he has not even demonstrated a violation of federal law.  In federal court, a "supervening jury verdict ma[kes] reversal of the conviction and dismissal of the indictment inappropriate." *United States v. Mechanik*, 475 U.S. 66, 71 (1986). This is because the "subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt. Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt." *Id.*

       8.       *Jamison's Second Ineffective Assistance Claim*

During the entire period prior to Jamison's initial sentencing for this case in state court, the prosecutor, defense counsel, and the court all erroneously believed that his 1986 conviction for attempted criminal possession of a weapon in the third degree was a "violent felony."  In his second § 440 motion, Jamison argued that his counsel was ineffective for failing to discover this error.  Even though the error was eventually recognized and Jamison was resentenced, he claims that he suffered prejudice because the prosecution would have offered a more generous plea if counsel had brought to light the true nature of the 1986 conviction, and Jamison would have accepted it.

The Supreme Court has established the following standard for claims that defense counsel provided ineffective assistance:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant

14

> makes both showings, it cannot be said that the conviction ... resulted from a
> breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). Thus, to make out this type of claim, Jamison must show both (1) that counsel's performance "fell below an objective standard of reasonableness," *id.* at 688, and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.

The state court rejected Jamison's claim, holding that he had failed to demonstrate either deficient performance or prejudice under *Strickland*. Jamison cannot obtain habeas relief on this ground because the state court did not unreasonably apply *Strickland* when it held that Jamison had failed to demonstrate prejudice from counsel's allegedly deficient performance.

In this case, there would have been a different result only if, upon learning that the 1986 conviction was not a violent felony, (1) the prosecution would have made a more favorable plea offer, (2) Jamison would have accepted the offer, and (3) the judge would have sentenced Jamison accordingly. Assuming *arguendo* that Jamison could demonstrate that the first and second events were reasonably probable,[1] the record makes clear that there was little chance of a different outcome. The judge who presided over Jamison's trial and sentencing, in denying Jamison's § 440.10 motion, stated that "given the defendant's extensive criminal record, coupled with this Court's knowledge of the facts and circumstances of this case, this Court would not have been amenable to accepting a more lenient plea and sentence." Memorandum at 4, *People v. Jamison*, Indictment No. 1563/1998 (Sept. 27, 2004). Under these circumstances, I

---

[1] The state has consistently maintained that, had it known that Jamison was not a mandatory persistent violent offender, it still would have sought to sentence him as a discretionary persistent violent offender. Jamison indicated in his affidavit that after he rejected the government's plea offer of 20 years to life, he told counsel only that he "would *consider* a plea involving a lesser sentence." (emphasis added). Pet'r Mot. to Vacate Judgment of Conviction Ex. I, *People v. Jamison*, 826 N.Y.S.2d 573 (2d Dep't 2007).

cannot conclude that the state court's rejection of Jamison's ineffective assistance claim was an unreasonable application of *Strickland*.

10.    *Ineffective Assistance of Appellate Counsel*

Finally, Jamison, regurgitating the claims made in his unsuccessful motion for a writ of error *coram nobis*, claims that his appellate counsel was defective and conflicted in numerous ways. "The proper standard for evaluating [a] claim that appellate counsel was ineffective . . . is that enunciated in *Strickland v. Washington*." *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Applying this standard, I conclude that none of these contentions has merit.

a.    *Sufficiency of the Grand Jury Evidence*

Jamison argues that his appellate counsel erred by failing to raise the alleged insufficiency of the evidence before the grand jury. *See also supra* B.7. This claim is meritless. If a defendant challenges the sufficiency of the grand jury evidence and loses, he cannot appeal this decision once he has been convicted. N.Y. C.P.L. § 210.30(6). Although the New York state courts have not addressed the question, it follows that a defendant who has not challenged the sufficiency of the grand jury evidence before conviction cannot do so on appeal.

b.    *Conflict of Interest*

During resentencing, Jamison was given the opportunity to object to the constitutionality of his prior convictions. He now claims that his counsel, an employee of the Legal Aid Society, failed to attack the 1989 conviction because Jamison was also represented by a Legal Aid Society lawyer in that matter. He believes this failure represents a conflict of interest which deprived him of the effective assistance of counsel at sentencing.

When a defendant argues that he was deprived of effective assistance of counsel by his lawyer's divided loyalties, rather than his ineptitude, he need not make the showing of prejudice required under *Strickland*. Nonetheless, he "must show that at least some plausible defense strategy was forgone as a consequence of" the alleged conflict of interest. *Eisemann v. Herbert*, 401 F.3d 102, 108 (2d Cir. 2005). But Jamison does not allege that he or his counsel ever discovered any reason to believe the 1989 conviction was susceptible to attack. He only asserts that he was improperly sentenced for this conviction, because the sentencing judge in that case, like the initial sentencing judge here, erroneously treated his 1986 conviction as a violent felony. Even if correct, this contention is irrelevant. The validity and nature of his prior *convictions* were relevant at Jamison's sentencing; the validity of his prior sentences were not. The resentencing judge treated the 1989 conviction as a violent felony conviction, and there is no indication that it was improper to do so. Because "there is nothing in the record that provides the slightest indication" that a challenge to the 1989 conviction would have been successful, *id.*, Jamison cannot show that "an actual conflict of interest adversely affected his lawyer's performance." *Id.* (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980)).

      c.      *The Alleged February 5, 1999 "Plea Offer"*

Jamison also argues that appellate counsel was ineffective for failing to "argue that a plea offer was mentioned in the pre-trial Court" on February 5, 1999. Motion for Writ of Error *Coram Nobis* Prelim Stmt. 5, *People v. Jamison*, 842 N.Y.S.2d 920 (2007). However, Jamison concedes that "the record does not reflect the plea offer." *Id.* Furthermore, it seems highly unlikely that the government would offer a plea of "3 to 6 years," *id.*, Unlabeled Ex., when it believed that Jamison, because of his mandatory persistent violent offender status, was

forbidden from receiving such a lenient sentence as a matter of law. Counsel's time and resources are not infinite, and appellate counsel's performance was not deficient based on his failure to seek a hearing to divine the existence of this highly improbable fact.

    *d.*  *Ineffective Assistance of Trial Counsel*

    Jamison's final argument is that his appellate counsel should have argued that his trial counsel was ineffective. However, his allegations as to his trial counsel's ineffectiveness are uniformly meritless, as he has failed to demonstrate any prejudice from any alleged error.

    Jamison relies heavily on counsel's statement that he was "not ready" for trial, Tr. of May 3-4, 2000 at 2. Counsel went on, however, to say that this was because he had not yet received the property vouchers for Jamison's wallet and keys from the police department. *Id.* at 4. Jamison apparently hoped to use the fact that he was carrying a wallet and keys at the time of his arrest to impeach Officer O'Keefe, who had allegedly testified at the grand jury that Jamison was only carrying a beeper. *See id.* at 4-5. No prejudice resulted from this incident because the judge stated that if the vouchers were not forthcoming, he would instruct the jury that they would have shown that Jamison had a wallet and keys on his person when he was stopped by the police. *Id.* at 5-6.

    Jamison also alleges that counsel erred by failing to object when the trial judge failed to mention that criminal possession of a weapon requires that the possession take place outside the defendant's home or business. But there is no possibility that the outcome of Jamison's trial would have been any different had the jury heard this element. Finally, Jamison has offered no reason to believe that he was prejudiced by the fact that the jury requested and received a trial exhibit without notice to his counsel.

18

Jamison's claim that has lawyer failed to seek correction of an erroneous "identification" charge fails for a different reason. The record demonstrates that trial counsel ultimately requested (and received) a brief identification charge "instead of the expanded I.D. charge." Tr. 323. Requesting one jury charge in lieu of another is clearly a strategic choice, and Jamison must demonstrate that the choice was unreasonable. *United States v. Smith*, 198 F.3d 377, 389 (2d Cir. 1999). He has failed to do so -- it is not enough for Jamison to argue that he personally would have preferred the longer charge.

Because these claims of ineffective assistance of trial counsel are meritless, appellate counsel was not ineffective for failing to raise them. *See, e.g., Rolling v. Fischer*, 433 F. Supp. 2d 336, 351 (S.D.N.Y. 2006) ("[T]here can be no claim of ineffective assistance of appellate counsel where the underlying claims of ineffective assistance of trial counsel are themselves meritless.").

## CONCLUSION

For the reasons stated above, the petition is denied. As Jamison has failed to make a substantial showing that he was denied a constitutional right, no certificate of appealability shall issue.

So ordered.

JOHN GLEESON, U.S.D.J.

Dated: Brooklyn, New York
      October 2, 2008